In the Matter of the Estate of HUGO ZIETZ, JR., Deceased.

Surrogate's Court, New York County, May 25, 1951.

*Otto C. Sommerich* and *Benjamin Busch* for Willy Zietz, petitioner.

*Simon J. Nusbaum, Henry L. Ughetta, II,* and *William Fitz Gibbon,* in person, for William Fitz Gibbon, respondent.

FRANKENTHALER, S. This proceeding was brought by a brother of deceased to revoke ancillary letters of administration heretofore issued to respondent as the designee of an administrator appointed in the Principality of Liechtenstein. In accordance with an order made in the proceeding, a preliminary hearing has been had upon the issues as to compliance with the jurisdictional requirements for the issuance of the original letters of administration in Liechtenstein and of the ancillary letters of administration in this county.

Deceased was born in Germany. In 1929, deceased, then a citizen of the Argentine, became a citizen of the Principality of Liechtenstein. He died at Vienna, Austria, in 1934. An administrator of the estate was appointed in Liechtenstein in 1946 and ancillary letters of administration with limited authority were granted by this court in 1948 upon the petition of the designee of the Liechtenstein administrator.

Petitioner contends that Liechtenstein was without jurisdiction to administer the estate and hence the estate representative appointed in that principality could not properly designate a person to apply for ancillary letters of administration. Concededly deceased was never domiciled in Liechtenstein and he left no assets there. The position of respondent at the time of his application for ancillary letters was that deceased's domicile was in Austria but that Austria would not entertain jurisdiction of the estate since it would recognize jurisdiction to

be in Liechtenstein as the country of nationality./ In the instant proceeding respondent has pleaded in the alternative that deceased was domiciled in Austria or Germany and that the laws of each of these countries are similar to the extent that neither country would entertain primary jurisdiction of the estate but would recognize principal jurisdiction to be in the country of nationality. At the hearing divers efforts were made to establish that deceased was domiciled in Austria, Germany or Switzerland. It is acknowledged that if deceased's domicile was in Switzerland the Liechtenstein court was without jurisdiction. If his domicile was in either Austria or Germany a further question is presented as to whether under the law of the domicile the country of nationality is recognized as having jurisdiction to administer the estate.

The evidence contains no indication that deceased pursued any particular gainful occupation. His father was a man of substantial means. In 1926 deceased married in Switzerland and in the following year he was divorced in Germany. His father died in 1927, and thereafter his mother went to Switzerland and, in 1929, she built a home on the Lake of Zurich and thenceforth she spent most of her time in that country except for winter sojourns in southern France. The Swiss home was of a style in conformity with the wealth of the family and separate bedrooms were provided for deceased and his brother. Both prior and subsequent to the death of his father deceased traveled extensively throughout Europe and spent some time in the Argentine. Each of the parties has attempted to trace the peregrinations of deceased through reference to his passport visas. Petitioner finds that the circular tours of deceased originated and ended in Switzerland. Respondent believes that deceased initiated and concluded each journey in Germany. Each conclusion seems to be suggested only by the position on the periphery from which the particular party viewed the orbicular activities of deceased. A scrutiny of deceased's passport is not helpful, but indicative of a domicile in Switzerland are the facts that deceased's surviving parent's home was located there, that special accommodations in the house were allocated to deceased, that personal belongings of deceased were kept in that house, that deceased registered automobiles in Switzerland and used Swiss addresses upon his auto licenses and insurance, that he maintained a bank account in that country, that he used Swiss addresses on other occasions and that he was in and out of that country at intervals either for the

purpose of visiting his mother or possibly because he considered her home his headquarters. In support of an opposite view are the facts that the Swiss courts found deceased was not domiciled in Switzerland, that he did not pay Swiss taxes and that his use of addresses other than his mother's residence was contradictory of the contention that he regarded his mother's residence as his home.

Deceased visited Austria numerous times during his life. In the winter of 1934 he entered a sanatorium in Vienna and on February 7, 1934, he died in that institution. An Austrian court found no assets of deceased to be in that country. He was there for medical treatment at the time of his death and his only address in that country was the sanatorium. There is no intimation that he conducted any business there or had any substantial assets in the country. There is no reason to believe that the burial in Austria was in fulfillment of any express wish of deceased but, to the contrary, such interment seems to have been a convenient disposition of the remains at the direction of deceased's absent brother. The evidence does not establish deceased's domicile to have been in Austria.

Deceased's domicile of origin was Germany. He was divorced there in 1927, and it seems that, at least up to the time of his father's death in September of that year, deceased was domiciled in Germany. After the removal of deceased's mother to Switzerland, homes still were owned by the family in Germany. Deceased conducted some business ventures in that country and spent periods of time there. Certain Austrian death records stated that deceased resided in Germany. Nothing has been shown to establish that deceased at any time changed his domicile to Germany from another country. If he did relinquish his domicile of origin and did acquire a later domicile, the evidence points to Switzerland. A finding of domicile in the latter country will not validate respondent's letters and hence respondent's right to letters may be sustained only if the law of the domicile of origin controls and that law supports respondent's contentions.

The German substantive law of inheritance is that succession to assets is governed by the law of the nationality of the deceased irrespective of the fact that deceased was domiciled in Germany at his death (articles 24 and 25 of the Introductory Law to the German Civil Code). German courts have held that the rule of substantive law also is controlling upon the question of judisdiction and that German courts will not assume juris-

diction over the estate of a foreigner who had his domicile in Germany (Decision of the Kammergericht of May 11, 1908, in Jahrbuch der Entscheidungen des Kammergerichts, Vol. 36, p. A 102; Decision of the Kammergericht of July 11, 1911, in Jahrbuch der Entscheidungen des Kammergerichts, Vol. 41, p. 62; Decision of the Kammergericht of January 29, 1920, file No. 1 X 329–19, in Rechtsprechung der Oberlandesgerichte, Vol. 40, p. 159; Decision of Oberlandesgericht Dresden of February 17, 1914, in Rechtsprechung der Oberlandergerichte, Vol. 30, p. 177; Decision of the Bayerisches Oberstes Landesgericht of December 19, 1919, in Rechtsprechung der Oberlandesgerichte Vol. 40, p. 160).  Commentaries upon the German Civil Code seem to be in agreement with the statement that the assumption of jurisdiction over estates is dependent upon the fact of German nationality and that domicile in that country is of itself insufficient to warrant the exercise of general jurisdiction (Kommentar der Reichsgerichtsraete and Translation [8th ed., 1935], Vol. 5, § 2369, p. 406; Staudinger: Kommentarzum Buergerliches Gesetzbuch [1931 ed.], Vol. VI, part 2, p. 628, Annotations to Articles 24 to 26 of the Introductory Law and Annotation to Article 25 of the Introductory Law, pp. 726–727; Soergel: Buergerliches Gesetzbuch [1939 ed.], p. 946, 994; Civil Code, § 2369 and annotation to article 25 of the Introductory Law to the Civil Code).  The text writers acknowledge that the principle of nationality governs the exercise of general jurisdiction (Nussbaum, Deutsches Internationale Privatrecht [1932], p. 366, et seq.; Wolff, Das Internationale Privatrecht Deutschlands [1949], p. 200 et seq.); although it appears that certain writers (who it has been suggested represent a minority viewpoint) contend for a different rule (Lewald, Das Deutsche Internationale Privatrecht [1931], p. 330 et seq.).

Respondent asks this court to find deceased's domicile to have been within Germany at his death as the essential premise for a consequent finding that the courts of Liechtenstein had jurisdiction of the estate. Upon the facts presented a finding of German domicile can be made only on the theory that deceased never relinquished his domicile of origin. If deceased was domiciled in Germany at his death it was solely because Germany was his domicile of birth.  It would follow from a conclusion that deceased's domicile was unaltered in his lifetime, that deceased was domiciled in Germany at the time of his application for Liechtenstein citizenship, for, if he was not so domiciled at that time, his domicile was not a continuous

one and he was not domiciled in Germany at his death. The acquisition of foreign citizenship by a German domiciliary would be effective under German law to confer jurisdiction of his estate upon the country of acquired nationality provided that, under German law, there was an effective loss of German citizenship. The pertinent German law is found in article 25 of the Nationality Law of 1913 which prescribes as an essential prerequisite to loss of German citizenship that the person concerned must be neither domiciled nor permanently sojourning in Germany at the time application for foreign citizenship is made. If deceased was domiciled in Germany at the time of his application for Liechtenstein citizenship, adoption of new citizenship did not effect, under German law, a loss of his German citizenship and, under the law of that country, he remained a German national of whose estate jurisdiction would be exercised by German courts. Consequently, under the circumstances here existing, a determination by this court that deceased's domicile was in Germany would not sustain respondent's position, under the alternative plea in his amended answer, that Liechtenstein had original jurisdiction of this estate.

The proof does not establish that Liechtenstein was either the country of deceased's domicile or the jurisdiction recognized by the law of deceased's domicile (whether such domicile be in Switzerland or Germany) as the proper locus of principal administration. The administrator appointed in Liechtenstein was not a primary administrator and he was at best acting in an ancillary capacity. Upon the motion in this proceeding for judgment on the pleadings this court had occasion to consider at some length the necessary jurisdictional requirements for the issuance of ancillary letters in this State and no purpose will be served by a present repetition of the matter discussed in the earlier opinion (*Matter of Zietz*, 198 Misc. 77). It is now held that the jurisdictional requirements for the issuance of ancillary letters of administration were not met. The application to revoke the letters is granted.

Petitioner's motions to strike out respondent's exhibits 18, 19, 39, 40, 41, 42, 46 and 59 are granted. Respondent's motions to strike out petitioner's exhibits 32, 33, 38, 39 and 41 are granted. The other motions to strike out exhibits are denied.

The court fixes $2,000 as the reasonable amount of additional expense for which petitioner is entitled to be reimbursed under the terms of the order that authorized respondent to serve an amended answer.

Submit decree on notice.